**UNION LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Leona Joyce PRIEST, Defendant-Appellant**

and

**Morna L. Boyle, Defendant-Appellee.**

No. 81–1270.

United States Court of Appeals, Tenth Circuit.

Dec. 15, 1982.

Austin R. Deaton, Jr., Deaton, Gassaway & Davison, Inc., Ada, Okl., for defendant-appellant.

James T. Branam, Branam & Dennis, Coalgate, Okl. (Richard E. Branam, Branam & Dennis, Coalgate, Okl., with him on the brief), for defendant-appellee Morna L. Boyle.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The decedent herein, Samuel L. Priest, had been an employee of Arkansas-Louisiana Gas Company (Arkla) for many years. As such employee he was covered by a group life insurance policy which the company carried with Union Life Insurance Co. and under which his life was insured for $15,000. Involved herein is a dispute between the surviving wife, who was his second wife, and his daughter. The daughter's claim is based upon an attempted change of beneficiary form which was not properly signed plus an assignment executed to her by Mrs. Priest.

The dispute results from the failure of Samuel L. Priest to properly execute the change of beneficiary form which had been furnished him by the Union Life Insurance Company. The initial beneficiary in the policy was Samuel L. Priest's first wife, Merdia E. Priest. The first wife died, however, in 1974. Following her death, Arkla sent Priest the necessary forms to change the beneficiary of both his life insurance and his pension benefits. Upon receipt of the forms he properly completed the one relating to his pension benefits. He named his daughter Morna L. Boyle, the appellee, as the beneficiary to receive sums due under his pension plan. He failed, however, to sign the beneficiary form relating to his life insurance. Instead, Mrs. Boyle signed it and Union Insurance considered Mrs. Boyle to be the beneficiary until sometime after the death of the insured. Both forms were offered in evidence, being marked as Boyle's Exhibit 1 and Priest's Exhibit 1. These are attached to the brief as a part of an appendix. The date of marriage between Samuel L. Priest and Leona Joyce Priest was March 12, 1976. It continued until the death of Samuel L. Priest, which took place in June, 1977.

A provision of the life insurance policy stated that:

In the event no designated beneficiary shall survive the insured individual or no beneficiary was designated by the insured individual, the insurance proceeds shall be payable to the spouse of the insured individual, if living at the death of the insured individual; if not then living, equally to the children of such insured individual who survive him; if none survive, to either the surviving father or mother of such insured individual, or to both equally if both survive; if none of the above survive the insured individual, to his executors or administrators.

After Mr. Priest's death, the appellant Mrs. Priest employed lawyers to represent her. These attorneys inquired of Arkla concerning the benefits due upon the death of Samuel L. Priest to his surviving wife or heirs. Arkla advised that there were pension plan benefits to which appellee was properly entitled but they received no spe-

cific information regarding the life insurance benefits.

Appellant received from Arkla a life insurance claim form which identified the appellee, Morna L. Boyle, as the life insurance beneficiary. This exhibit is also included in the appendix to the brief. The appellant then had no further reason to doubt that the appellee was the properly designated beneficiary under the life insurance policy and did not therefore pursue any claim to the proceeds.

Sometime after the death on June 30, 1977 Arkla wrote a letter to appellee's attorney and sent a copy to the appellee. It provided copies of the life insurance policy and the invalid change of beneficiary form, among other documents also enclosed. Following appellee's receipt of the copy of the life insurance policy and the invalid change of beneficiary form, copies were sent to the appellant, Mrs. Priest. These had been prepared by Arkla and identified the appellee as the life insurance beneficiary. Payment of the proceeds, however, were not received and the appellee and her attorney knew that payment was being withheld because the change of beneficiary form had not been executed by Samuel L. Priest in 1974. In order to solve the problem, the appellee, acting through her attorney, asked the appellant to execute a disclaimer or assignment of the insurance policy so that appellee could receive payment from the insurance proceeds. Neither the appellant nor her attorney had been advised of the fact that the form had not effectively named the daughter as beneficiary and that if Morna Boyle was not the beneficiary the widow would be so regarded.

By threat of legal action against the appellant, the appellee's attorney prevailed upon the appellant and her attorney to execute and deliver to them the assignment of the life insurance policy. The assignment also described the retirement plan benefits, to which the appellee was properly entitled, which fact was known to both the appellant and her attorney.

## I.

Apparently Mr. Priest may well have been aware of the fact that the change of beneficiary form was sent in by his daughter, Morna L. Boyle. It is important to notice also that the Union Insurance Co. treated the form as having brought about a change in beneficiary because from that time on Morna L. Boyle, the daughter, was regarded as the beneficiary of the policy.

The trial court placed great emphasis upon the fact that Leona Joyce Priest, acting through an attorney, assigned her right to the proceeds of the life insurance policy of Samuel L. Priest to Morna L. Boyle, the daughter of the decedent. This written assignment was signed by Mrs. Priest and notarized by Lou Lowery, so the finding goes, who stated in writing on the assignment that Mrs. Priest had acknowledged to Lowery that the assignment was a free and voluntary act. Also Mrs. Priest was represented by an attorney at the time that she executed the assignment and her attorney had advised her to execute the assignment. The trial court found that Leona J. Priest had not made the assignment under a mistaken belief that Samuel L. Priest had properly changed beneficiaries. After signing it Mrs. Priest mailed the written assignment to James Branam, attorney for Morna Boyle.

The trial court also found that neither Morna Boyle nor her attorney made any misrepresentation, fraudulent or otherwise to Leona J. Priest concerning Mrs. Priest's right to the life insurance proceeds.

The attorneys for appellant Mrs. Priest have argued that fraud existed but they have no evidence to show it and the basic facts do not provide any inference of fraud.

The fact that there is a dearth of evidence to establish that Mrs. Boyle was even aware of her legal position in the matter supports the finding that the trial judge made as to the lack of fraud on her part or on the part of her attorney. In finding that Mrs. Priest had no mistaken belief, the court is saying that she apparently knew what the factual situation was. Based on

the fact that Mrs. Priest executed the assignment and did so on the advice of her attorneys and in view of the fact that there was no evidence of fraud on the part of Mrs. Boyle or her lawyers, the trial court concluded that "defendant Morna Boyle is therefore entitled to the proceeds of the life insurance policy deposited by plaintiff in the registry of this court. Leona J. Priest intended to extinguish and did extinguish by written assignment her rights in the life insurance proceeds and transferred her rights in those proceeds to Morna Boyle, who accepted the assignment." Thus the trial court's decision was largely predicated on the validity of the assignment and the judge found the facts in favor of Morna Boyle, the daughter.

The appellant, Mrs. Priest, relies on fraud or "inequitable conduct" as a basis for the decision. The intention is that mutual mistake or unilateral mistake by one party and fraud or inequitable conduct by the other constitutes a basis for the decision. We do not consider this. The dearth of evidence renders such consideration unnecessary.

There was a lengthy examination of Mrs. Boyle as to when she became aware of the fact that the change of beneficiary form which was signed by her was ineffective. She replied that "I really don't remember just when I was made aware of it. My lawyer brought it to my attention sometime during this." At the same time, counsel for Mrs. Priest sought to show that Mrs. Boyle withheld the matter from Mrs. Priest but when all the questions and answers are read it would seem that she did not have any conversation with Mrs. Priest. She said "no, sir, I never talked to Mrs. Priest or her attorney at any time."

From a reading of this testimony it does not appear that Mrs. Boyle was guilty of any fraud. The change of beneficiary to her which was not signed by the decedent in his lifetime was delivered to the insurance company some years prior to his death and the insurance company never returned the form or otherwise advised Mrs. Boyle that she had not filled it out properly. It was only when the matter of payment of the proceeds of the insurance was present that the insurance company informed Mrs. Boyle and her attorney that this had not been filled in properly.

We see no merit whatsoever in the fraud allegation. Mrs. Boyle neither said anything nor did she do anything fraudulent and she was not under an obligation to notify Mrs. Priest· that there were some problems with respect to a change of beneficiary to her. They had access to the information. We believe that the trial court was right in holding that this did not constitute fraud.

II.

■ The further position on behalf of Mrs. Priest is that the assignment of the insurance policy or the proceeds payable under this contract must be supported by a valuable consideration. No authority is cited for this and indeed the authorities that are cited go to contracts generally but not to gifts such as this, which are reduced to a formal assignment. We have not been able to find any authority to the effect that an assignment such as the present one requires consideration. Professor Corbin considers this at some length in his treatise on contracts at 4 Corbin on Contracts, § 909, p. 643–44 (1951). The author states:

> The force of human convenience and business practice was too strong for the common-law doctrine that choses in action are not assignable. They have proved too strong, also, for the doctrine that a gratuitous assignment is not effective because equity will not aid a volunteer.

In the second paragraph of § 909 it is said:

> At the present time, it is not necessary to review the learned arguments that were made for and against the theory that an assignment was ineffective unless it was for value. It is sufficient to say that time has decided the controversy; the cases holding a gift assignment to be effective are legion—it is no defense to an obligor that the assignee gave no consideration. The American Law Institute therefore correctly states that "an assignment is not ineffective because it is conditional revocable or voidable by the assignor for lack of consideration or for other

reason, or because it is within the provisions of the statute of frauds." This means that the lack of consideration does not prevent the assignment from being effective as a transfer to the assignee of the assignor's right against the obligor.

This we may regard as wholly settled. The present litigation, of which there is a vast amount, is concerned with the question whether the gift assignment can be revoked by the assignor and whether the assignor's death before enforcement terminates the gift-assignee's right. (Footnotes omitted).

Numerous cases were cited by Professor Corbin from federal courts and many states including California, Colorado, Connecticut, Indiana, Iowa, Massachusetts, Michigan, New Jersey, New York, Rhode Island, England, etc. Also there are articles by Jenks, Anson and Costigan in 16 L.Q.Rev. 241, 17 L.Q.Rev. 90, 27 L.Q.Rev. 326; by Rundell, *Gifts of Choses in Action,* 27 Yale L.J. 643 (1918); Dickinson, *Gratuitous Partial Assignments,* 31 Yale L.J. 1 (1921).

After reading what is said by Professor Corbin on this subject, we must conclude that the second contention on behalf of Mrs. Priest is apparently lacking in merit.

It follows that the judgment of the district court should be and it is hereby affirmed.